that the judgment, so far as it is appealed from, should be reversed, with costs to the appellant to abide the event.

Judgment, so far as appealed from, reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except ADAMS, J., not voting.

---

EDGERLEY v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. November 21, 1899.)

APPEAL—EVIDENCE.

 Verdict for plaintiff will not be disturbed, the controlling issue being whether the gates at a railroad crossing were suddenly lowered as he approached on a tandem, coming between him and the companion back of him on the rear seat, so as to throw him under the approaching engine, or whether, as contended by defendant, plaintiff ran into the gate after it was lowered, and was thrown over it, though only three witnesses besides plaintiff and his companion testified for him, and they, according to defendant's witnesses, made contrary statements shortly after the accident; all the eight witnesses for defendant being employés of it.

Appeal from trial term, Kings county.

Action by Walter E. Edgerley against the Long Island Railroad Company. From a judgment on a verdict of $24,500 for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and HATCH, JJ.

William J. Kelly, for appellant.
Samuel D. Morris, for respondent.

GOODRICH, P. J. About half past 10 o'clock on the evening of October 30, 1897, the plaintiff and one MacFarland were riding a tandem bicycle along Sixth avenue, Brooklyn,—the plaintiff occupying the forward seat,—intending to cross the tracks of the defendant where Sixth avenue meets them. The defendant's roadbed at the location in question extends along the middle of Atlantic avenue, in an easterly and westerly direction, while Sixth avenue approaches Atlantic from the south, but does not cross it. South Portland avenue is on the north side of the track, deflects slightly to the west, and is practically a continuation of Sixth avenue. The defendant's roadbed, which is about 25 feet in width, is inclosed with iron fences, except that at various places, where streets cross, there are gates. Outside the fence, and on the southerly side of Atlantic avenue, lie the tracks of a trolley road, the crossing of which at Sixth avenue, as well as that over the defendant's tracks at Sixth avenue, is filled with planking. On each side of this railroad crossing, and in the line of the fence above mentioned, is a gate, operated by a flagman stationed there. These are what are known as "arm gates," with a wire hood or screen hanging under each one. There are four gate posts, to which the larger ends of the arms are, respectively, attached,—one at each of the corners

of the crossing. These gates are lowered and raised by two cranks operated by the gateman, and do not fall by force of gravity or automatically. Each gate consists of two strips in a truss form, tapering to a single strip of wood, until at the end it is 1 by 1½ inches in size. This end, when the gate is down, rests near the center of the opening in the iron fence, upon an iron rod attached to the end in such a manner that it assumes a position at right angles with the gate only when the latter is down. The line of the gates when they are lowered and resting on their respective rods is parallel with, and 4 feet from, the surface of the crossing. The hood or screen hangs beneath the gate, and reaches to within about 20 inches of the ground when the gate is down. The utmost height of the bicycle was 3 feet and 4 inches. The gates are not rigid where they meet at the center when down, but yield to pressure. The rules of the defendant require the setting of the gates whenever trains are about to pass the crossing. On the night in question the plaintiff and his companion, who were familiar with the crossing, were approaching it along Sixth avenue, intending to cross on their tandem over to South Portland avenue, and while they were in the act of crossing the accident occurred which resulted in the injuries to the plaintiff which form the basis for this action. The evidence offered by the plaintiff and by the defendant differed radically on what we consider the crucial point of the controversy. The theory supported by the plaintiff's evidence is that at the time of the accident the gates were wide open or raised, and that, there being nothing to give him warning of any approaching train, he, with his companion, started on the tandem to cross the tracks, having decreased its speed from seven to four miles an hour, when an engine going east approached the crossing, in consequence of which the gateman suddenly lowered the gates on the south side, dropping one of the arms between the two riders, the effect of which was a sudden stoppage of the tandem, projecting the plaintiff onto the engine, under which he rolled, and received such injuries as to compel the amputation of his legs,—one at the knee, and the other between the knee and ankle. There was evidence supporting the contention of the defendant, that the gates had been lowered by the gateman for an engine coming from the east and going west, and that they remained down as a protection while another engine (the one which caused the injury to the plaintiff) was going east at a slow rate of speed; that the plaintiff ran into the closed gate, and was thrown from the tandem over onto the engine; that either MacFarland dismounted from the tandem, or that it was overturned and he fell to the ground under the post outside the gate.

The court, in an admirable charge, to which we find no tenable exception, submitted to the jury the question which of these theories was true. The jury found a verdict for the plaintiff, which, though large, is not claimed by the defendant to be excessive. The judgment, however, is attacked as being against the evidence. The earnest argument of the counsel for the defendant has required a careful analysis of all the testimony in the case. It would serve

no useful purpose to give in détail the method of analysis, or to weigh the credibility to be given to the testimony of the witnesses on each side. It is evident that the crucial point in the case is the condition of the gates,—whether, being open, they were suddenly dropped between the tandem riders, or whether, being closed, the plaintiff and his companion ran into them. There were five witnesses who testified that the gates were open, and eight who testified that they were closed, as follows: For plaintiff: O'Connor, MacFarland, Willard, Carroll, Edgerley. For defendant: Bender, engineer; Grape, brakeman; Dercker, brakeman; Carey, fireman; Duffy, conductor; Halsey, fireman; Whitney, engineer; Keating, gateman. It will be observed that, in addition to the plaintiff and his companion, there were three witnesses for the plaintiff; and, while it is true that the credibility of some of the plaintiff's witnesses was more or less shaken by evidence of contrary statements made by them shortly after the accident, it is also true that all of the defendant's witnesses on this point were, or had been, connected with the defendant company. It would have been error to have dismissed the complaint. There was a clear question of fact, depending upon the credibility to be given by the jury to the testimony of the witnesses for each party to the controversy. Whatever may be our own judgment as to the conclusion at which the jury ought to have arrived, we adhere to our opinion in Rippe v. Railway Co., 35 App. Div. 321, 54 N. Y. Supp. 958, where we said (page 322, 35 App. Div., and page 959, 54 N. Y. Supp.):

"There is no such preponderance of testimony in the record as to justify interference with the verdict. We cannot say that, as matter of law, after giving the proper weight to all the evidence, it cannot be right, or that it is so contrary to the preponderant proof as to startle by its absurdity, or to suggest a suspicion of evil influence."

We have carefully examined the exceptions, both as to evidence and charge, and we cannot discover that any of them require a reversal of the judgment. The judgment should therefore be affirmed.

Judgment and order affirmed, with costs. All concur.

